44

[835 NYS2d 635]

In the Matter of Arthur DiPietro, a Suspended Attorney, Respondent. Grievance Committee for the Tenth Judicial District, Petitioner.

Second Department, May 1, 2007

APPEARANCES OF COUNSEL

*Rita E. Adler*, Hauppauge (*Nancy B. Gabriel* of counsel), for petitioner.

*Richard E. Grayson*, White Plains, for respondent.

**OPINION OF THE COURT**

Per Curiam.

The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a petition dated May 17, 2005, containing three charges of professional misconduct. After a preliminary conference and a hearing, the Special Referee sustained all three charges. The Grievance Committee now moves to confirm the report of the Special Referee and to impose such discipline upon the respondent as the Court deems just and proper. The respondent's counsel has submitted an affirmation in response in which he requests that the Court limit any sanction to a one-year suspension with credit for the time already elapsed under an interim suspension.

Charge One alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law by converting client funds and/or breaching his fiduciary duty by failing to preserve client funds entrusted to him, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

In or about November 1999, the respondent was retained to represent the interests of Leo Bek in the sale of real property located in East Quogue to Baybrook Homes. Prior to the contract of sale, which was entered into on or about November 8, 1999, Bek transferred ownership of the property to himself as nominee for his children.

At the closing on August 3, 2001, the respondent received proceeds in the sum of $91,492. He deposited that sum into his North Fork Bank IOLA account on August 4, 2001. The respon-

dent issued checks totaling $81,491.98 pertaining to this transaction, which were dated August 3, 2001, and drawn against the proceeds on deposit in his IOLA account. The balance remaining was approximately $15,000.02. A dispute arose between the respondent and his client involving disbursement of that balance. The respondent had issued a $2,500 check to himself from the sale proceeds, leaving a balance of $12,500.02.

In September 2001, the law firm of Hellman and Shearn advised the respondent that it had been retained by Bek to retrieve the balance of the escrow money. On at least six occasions between January 23, 2002, and the closing of the account on July 10, 2002, the balance in the account fell below the amount the respondent was required to be holding.

The Fee Disputes Committee of the Suffolk County Bar Association issued a decision that the respondent owed Bek $19,307.67 for this matter and for another real estate transaction. The respondent utilized funds on deposit on behalf of other clients to pay Bek.

Charge Two alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law by converting client funds and/or breaching his fiduciary duty by failing to preserve client funds entrusted to him, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The respondent failed to preserve client funds entrusted to him as a fiduciary in reference to his North Fork Bank IOLA account in the Bek transaction as well as the following additional real estate transactions: Statchnik to Fazio, Wilcox to DiPietro, Barta Refinance, and Statchnik to Gasparik.

As of September 30, 2001, the respondent was required to be preserving on deposit in the North Fork Bank IOLA account a total of $151,318.02 in escrow liabilities on behalf of four real estate transactions. His balance on September 30, 2001, fell to $150,976.63.

As of October 31, 2001, the respondent was required to be preserving on deposit in the North Fork Bank IOLA account a total of $163,800.02 in escrow liabilities on behalf of four real estate transactions. His balance on October 31, 2001, fell to $102,830.79.

As of November 30, 2001, the respondent was required to preserve on deposit in the North Fork Bank IOLA account a total of $143,800.02 in escrow liabilities on behalf of three real

estate transactions. His balance on November 30, 2001, fell to $81,640.

As of December 31, 2001, the respondent was required to preserve on deposit in the North Fork Bank IOLA account a total of $138,800.02 on behalf of three real estate transactions. His balance on December 31, 2001, fell to $63,140.79.

As of January 31, 2002, the respondent was required to preserve on deposit in the North Fork Bank IOLA account a total of $105,800.02 in escrow liabilities on behalf of two real estate transactions. His balance on January 31, 2002, fell to $4,140.79.

Charge Three alleges that the respondent engaged in conduct adversely reflecting on his fitness to practice law by converting funds and/or breaching his fiduciary duty by failing to preserve client funds, in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and DR 1-102 [a] [7]) (22 NYCRR 1200.3 [a] [7]).

The respondent has failed to preserve client funds entrusted to him as a fiduciary in reference to his IOLA account at Suffolk County National Bank in relation to the following six real estate transactions: Dugan to Gordon, Solomon to Cangemi, Morris to GKB Tax Lien Services, Weiss to Super Moto, Haines to Ruddick, and Jorge to O'Neill.

As of July 31, 2002, the respondent was required to preserve on deposit in his Suffolk County National Bank account a total of $142,380.86 in escrow liabilities on behalf of three real estate transactions. His balance on July 31, 2002, fell to $137,655.86.

As of August 31, 2002, the respondent was required to preserve on deposit in his Suffolk County National Bank account a total of $220,805.86 in escrow liabilities on behalf of six real estate transactions. His balance on August 31, 2002, fell to $210,460.86.

As of September 30, 2002, the respondent was required to preserve on deposit in his Suffolk County National Bank account a total of $213,898.90 in escrow liabilities on behalf of five real estate transactions. His balance on September 30, 2002, fell to $197,844.53.

As of October 31, 2002, the respondent was required to preserve on deposit in his Suffolk County National Bank account a total of $155,898.90 in escrow liabilities on behalf of three real estate transactions. His balance on October 31, 2002, fell to $119,545.90.

The respondent does not deny the factual allegations contained in the three charges but asks the Court to note that the time period of the charges coincides with his and his wife's being stalked and threatened by his son, the tragedy of his son's suicide, and his efforts to keep his life together in the aftermath. He submits that his admitted failures to comply with the Code provisions do not rise to the level of a violation of the Code of Professional Responsibility and should not result in the continued loss of his law license. In the alternative, should the Court sustain the charges, the respondent asks that the Court limit the sanction imposed to a one year suspension with credit for time served.

The respondent had a fiduciary obligation to preserve escrow funds for clients in both his North Fork and Suffolk County National bank accounts. The respondent's bank statements for these accounts, together with the stipulation and his admissions, clearly demonstrate that both account balances fell below the required amounts he was to be preserving on behalf of his clients. It is well-settled that a conversion of funds occurs when the balance in an escrow account falls below the client's interest therein. Based on the evidence adduced, the Special Referee properly sustained all three charges of professional misconduct. Accordingly, the Grievance Committee's motion to confirm the Special Referee's report is granted.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to consider his full cooperation with the Grievance Committee's investigation, his admission of the factual allegations of the petition and of his mistakes in the handling of his escrow account, the total absence of venal intent, and the remedial steps undertaken prior to his interim suspension. Significantly, there were no grievances leveled against the respondent by any clients with the exception of the Bek complaint. The respondent points out that there was no resultant harm to any client inasmuch as they all received the funds to which they were entitled.

Notwithstanding the mitigation advanced by the respondent, including the family tragedy which occurred at or around the time of the events in question, he is guilty of serious professional misconduct. Despite his more than 38 years of practice, the respondent failed to maintain appropriate records of his escrow accounts. He was unable to offer any explanation whatsoever for the shortfalls in those accounts. Significantly, he closed out the North Fork account while there were outstanding

escrow liabilities with no evidence that any funds had been transferred into his new account. Fortunately for the respondent, his mismanagement of escrow funds did not result in additional client complaints. Under the totality of circumstances, commencing immediately, the respondent is suspended from the practice of law for two years.

SCHMIDT, J.P., CRANE, MASTRO, RIVERA and RITTER, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, Arthur DiPietro, is suspended from the practice of law for a period of two years, commencing immediately, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of that period upon furnishing satisfactory proof that during that period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), (3) complied with the continuing legal education requirements of 22 NYCRR 691.11 (c), and (4) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Arthur DiPietro, shall continue to desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Arthur DiPietro, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and he shall certify to the same in his affidavit of compliance, pursuant to 22 NYCRR 691.10 (f).